IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 11 |
| SHAHRIAR S. BOZORGZADEH, | |
| KELLY L. EVANS, | |
| Debtor(s). | Case No. 10-40190 |
| | |
| JAVIER MUNIZ, | |
| Plaintiff(s), | |
| | Adversary No. 10-4046 |
| v. | |
| | |
| SHAHRIAR S. BOZORGZADEH, | |
| KELLY L. EVANS, | |
| Defendant(s). | |

OPINION

The plaintiff, Javier Muniz, moves for summary judgment on his amended complaint brought pursuant to 11 U.S.C. § 523(a)(2)(A) (Count I) and 11 U.S.C. § 523(a)(6) (Count II). The plaintiff asserts that after a lengthy jury trial in the Illinois trial court, an appellate decision in his favor from the Illinois Court of Appeals, and a denial of *certiorari* by the Illinois Supreme Court,[1] there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.

Drs. Bozorgzadeh and Evans (defendants) counter that the plaintiff has failed to attach a copy of the trial court's judgment to the motion for summary judgment. They also contend that the plaintiff has failed to provide an analysis of how the state court record meshes with the elements required to prove non-dischargeability under the relevant sections of the Bankruptcy Code. They argue further that there are facts in dispute. Lastly, they argue that the jury verdict forms and the jury instructions from the state court trial raise questions of fact and law that preclude summary

---

[1] *Muniz v. Bozorgzedeh*, 2009 IL Cir. Ct. 04-L-123U, *aff'd sub nom.*, *Muniz v. Herrin Medical Clinic, Ltd.*, 2011 IL Ill. App. Ct. 5-09-0614U, *cert. denied,* 963 N.E. 2d 246 (Ill. 2012).

1

judgment. On this last point, the defendants assert that the jury verdict forms reveal that the jury made no findings that the defendants committed actual fraud, as is required by § 523(a)(2)(A), or that they acted willfully and maliciously, as is required by § 523(a)(6).

## The Facts

The undisputed, material facts necessary to the Court's decision are taken from the Illinois Appellate Court's decision and the record presented on summary judgment.[2] The plaintiff and defendants are all medical doctors who, for a period of time had an employment and ownership interest in the medical practice known as the Herrin Medical Clinic, Ltd. (HMC). After exiting from the medical practice, the plaintiff, in 2003, obtained an arbitration award against the defendants and HMC. The award included amounts for current accounts receivable of $36,272.80, plus interest, $15,030.02 for stock, and reimbursement of attorney fees and expert fees.

Between January 2004 and July 2004, HMC had gross receipts showing accounts receivable of $146,644.27. Nonetheless, defendant Bozorgzadeh testified at trial that disapproval of a loan request by Old National Bank had "completely destroyed" his confidence to continue the operations of HMC and that he dissolved HMC on advice of counsel. On January 8, 2004, defendant Bozorgzadeh signed articles of incorporation for a new medical practice known as the Herrin Clinic, Ltd. (HC), in which he was the sole officer and shareholder.

On January 22, 2004, HMC ceased providing medical services. Articles of dissolution were signed by the defendants on February 2, 2004 to dissolve HMC. The defendants voted to sell the assets of HMC to HC, but not the accounts receivable. The plan of liquidation stated that the assets of HMC were primarily accounts receivable and various items of personal property and equipment.

---

[2] Although the defendants have disputed a number of factual assertions made by the plaintiff (Defs.' Resp. to Pl.'s Summ. J. at 2-4, Bankruptcy document 45), as will be discussed below, this Court is bound by the factual findings and legal conclusions reached by the state court.

HMC retained an appraiser who valued the office furniture and equipment at $25,720. On February 4, 2004, the assets (excluding accounts receivable) of HMC were sold to HC for this price, to be paid in installments. The transfer of assets from HMC to HC for $25,720 was "actually a transfer of substantially all of the assets of HMC, including professional goodwill . . . ." *Muniz v. Herrin Medical Clinic, Ltd.*, 2011 IL Ill. App. Ct. 5-09-0614U (Bankruptcy document 42-1, ¶ 38 at 15.) HMC was rendered insolvent due to the creation of HC and unable to pay its debts as they became due. "[H]ad the individual defendant physicians not transferred their income stream to HC, HMC would have remained viable and solvent." *Id.* (Bankruptcy document 42-1, ¶ 40 at 16.) By June 2004, collection on HMC's accounts receivable was no longer productive and collection efforts ceased.

On June 21, 2004, the plaintiff's arbitration award was reduced to a judgment. Soon after, on July 2, 2004, the plaintiff instigated litigation against the defendants in state court. The litigation in state court was based on theories of breach of the Illinois Business Corporation Act of 1983 (Count I), violation of the Illinois Uniform Fraudulent Transfer Act (Count II) and alter ego (Count III).

Several years later, on March 27, 2008, following an extended jury trial, the jury returned a Verdict Form as to Count II,[3] that assessed actual damages of $200,000 against the defendants, and against HMC and HC under the Illinois Uniform Fraudulent Transfer Act. (Verdict Form C, Defs.' Group Ex. A, Bankruptcy document 45-1 at 2.) The jury had received instructions allowing it to consider whether the conduct of the defendants constituted either actual or constructive fraud. (Defs.' Group Ex, A, Bankruptcy document 45-1 at 3-5.) Since Verdict Form C did not contain any

---

[3] The jury found in favor of the plaintiff on all three counts of the state court complaint. However, the amended complaint before the Bankruptcy Court is based on the state court finding that fraud occurred under the Illinois Uniform Fraudulent Transfer Act, as alleged in Count II of the state court complaint.

3

findings to explain the jury's determination, it was inconclusive as to whether the jury's decision was based on a finding of actual or constructive fraud. (Verdict Form C, Defs.' Group Ex. A, Bankruptcy document 45-1 at 2.)

The jury returned a Punitive Damage Verdict Form as well on March 27, 2008. On this Verdict Form, the jury found the conduct of defendants Bozorgzadeh and Evans to be "willful and wanton" and awarded the plaintiff $500,000 in punitive damages. (Punitive Damage Verdict Form, Defs.' Group Ex. B, Bankruptcy document 45-2 at 2.) The instructions to the jury defining "willful and wanton" stated, in part, that "[w]hen I use the expression willful and wanton conduct, I mean a course of action which shows actual or deliberate intention to harm or which if not intentional shows an utter indifference to or conscious disregard for the rights of Plaintiff, Javier Muniz, as a creditor of Herrin Medical Clinic, Ltd." (Defs.' Group Ex. B, Bankruptcy document 45-2 at 4.) As with the indeterminate nature of Verdict Form C, the Punitive Damage Verdict Form similarly was inconclusive as to whether the jury found "actual or deliberate intention to harm" or merely conduct which "if not intentional show[ed] an utter indifference to or conscious disregard for the rights of Plaintiff . . . ."[4]

Despite the inconclusive nature of the verdict forms, the Appellate Court of Illinois delivered a judgment on October 11, 2011, that removed all uncertainty arising from the jury's verdict. *Muniz v. Herrin Medical Clinic, Ltd.*, 2011 IL Ill. App. Ct. 5-09-0614U (Bankruptcy document 42-1.) The judgment stated in part:

---

[4] On October 21, 2009, the trial court judge made a docket entry in which he denied the defendants' motion for a new trial, held that the jury verdict as to each count was supported by the evidence, and found that the award of punitive damages was not excessive. The judge reduced the actual damages to $190,363.54, while leaving untouched punitive damages of $500,000, attorney fees of $225,000, and costs of $5,039.72. *Muniz v. Bozorgzedeh*, 2009 IL Cir. Ct. 04-L-123U. (Compl. Ex. A, Bankruptcy document 1-1.) Defendants argue that plaintiff's failure to attach a copy of the trial court's docket judgment to the motion for summary judgment should affect the outcome of this motion. However, the docket judgment is attached to the original complaint filed in this adversary proceeding and this Court takes judicial notice of its contents. *Id.*

> ¶ 38  Count II of plaintiff's complaint is for breach of the Uniform Fraudulent Transfer Act (740 ILCS 160/5 (West 2004)). Under the Uniform Fraudulent Transfer Act, a debtor is liable for transfer "with **actual intent** to hinder, delay, or defraud" a creditor. 740 ILCS 160/5(a)(l) (West 2004). The Uniform Fraudulent Transfer Act lists numerous factors suggesting that defendants possessed the requisite intent. 740 ILCS 160/5(b) (West 2004 ).  In essence, plaintiff presented sufficient evidence for the jury to find that the creation of HC was actually a transfer of substantially all of the assets of HMC, including professional goodwill, conducted from the inside and made in response to the arbitrator's award. 740 ILCS 160/5(b)(1), (b)(2), (b)(4), (b)(5), (b)(10) (West 2004).
>
> ¶39  Defendants contend that the award under count II was based on an erroneous interpretation of what was transferred. Plaintiff alleged that substantially all of the assets of HMC were transferred to HC for less than fair value with the intent to defraud plaintiff as creditor. Defendants attempt to limit the discussion to the transfer of personal property.  Defendants contend that the relevant transfer was that of the furniture and office equipment and point to the liquidation appraisal. As with the issue of alter ego, however, the record supports the finding that the creation of HC was a transfer of all the intangible assets from HMC.

*Id.*  (Bankruptcy document 42-1, ¶¶ 38, 39 at 15) (emphasis added)).

The Appellate Court's invocation of 740 ILCS 160/5 (a)(1) and (b)(1), (2), (4), (5) and (10) in ¶ 38 referred to the following provisions of the Illinois Uniform Fraudulent Transfer Act:

> § 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with **actual intent** to hinder, delay, or defraud any creditor of the debtor . . . .
>
> (b) In determining **actual intent** under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
>
> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;

> . . .
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> . . .
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . .

740 ILCS 160/5 (a)(1), (b)(1), (2), (4), (5), (10) (emphasis added).  The Appellate Court further upheld the jury's award of punitive damages because "the jury could easily find that defendants had a single purpose in dissolving HMC—to deprive plaintiff from collecting his award.  This conduct is readily characterized as reprehensible.  In other words, the action displayed intentional malice, trickery, and deceit."  *Muniz v. Herrin Medical Clinic, Ltd.*, 2011 IL Ill. App. Ct. 5-09-0614U (Bankruptcy document 42-1, ¶ 55 at 21.)

Legal Analysis

The defendants state correctly the standard that the Court must apply in determining whether summary judgment is appropriate.  "[T]he movant has the burden to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party.  *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995)."  (Defs.' Resp. to Pl.'s Summ. J. at 2, Bankruptcy document 45.)   In addition, the moving party must be entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  For the reasons that follow, the Court concludes that the plaintiff is entitled to summary judgment in his favor on both counts of the amended complaint.

In reaching this conclusion, the Court first turns to the preclusive effect that should be given to the decision obtained by the plaintiff in state court.  Determination of this issue requires an examination of the principle of collateral estoppel. Collateral estoppel or issue preclusion typically involves a finding of fact by a trial court that binds all subsequent proceedings as to that factual finding. *PaineWebber, Inc. v. Farnam*, 870 F.2d 1286, 1290 (7th Cir. 1989) (citing *Telegraph Savings and Loan Ass'n v. Schilling*, 473 N.E. 2d 921, 926 (Ill. 1984)).  At the outset the Court notes that 28 U.S.C. §1738[5] directs federal courts to give state court orders the same effect such orders would be given by the courts of the state which rendered the orders. *Paine Webber, Inc.*, 870 F.2d at 1290; *Jones v.City of Alton, Ill.,* 757 F.2d 878, 883 (7th Cir. 1985). Therefore, Illinois preclusion law will govern the effect to be given to the Illinois order.

Under Illinois law, three elements must be met before collateral estoppel will apply. There must be a valid final judgment, the judgment must have actually decided the issue presented in the subsequent proceeding, and the party against whom estoppel is asserted must have been a party or in privity with a party to the prior litigation. *Service Systems Corp. v. Van Bortel*, 528 N.E. 2d 378,

---

[5]  28 U.S.C. §1738 provides that:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

383 (Ill. App. Ct. 1988); *Fearon v. Mobil Joliet Refining Corp.,* 475 N.E. 2d 549, 554 (Ill. App. Ct. 1984).

There is no dispute in the instant adversary proceeding that the state court order is a valid final judgment since it was appealed to the Illinois Supreme Court which denied *certiorari*. In addition, there is no question that the defendants were parties in the state court proceedings. Lastly, as will be discussed in greater detail below, after an extended jury trial and lengthy appeal, the state court held that the defendants had engaged in actual fraud. This is the same determination that the Bankruptcy Court needs to make in deciding whether the debt owed to the plaintiff is non-dischargeable under §§ 523(a)(2)(A) and (a)(6). In fact, were plaintiff's motion for summary judgment denied and a trial required before this Court, the parties would find themselves staging a second performance of the state court trial. The purpose of collateral estoppel is to avoid such duplication of effort and the proverbial "second bite of the apple."

Moreover, the plaintiff contends that another doctrine—law of the case—binds this Court. The Seventh Circuit Court of Appeals describes the basic tenets of this doctrine as follows:

> The law of the case doctrine provides that once a competent court rules on a question of law, that ruling is generally binding on courts of equal or inferior dignity as to that legal issue between the same . . . parties given the same material facts . . . . While the . . . doctrine is most commonly invoked upon remand from an appellate ruling on a question of law, . . . the law of the case doctrine has been applied by federal courts to orders issuing from state courts . . . .
>
> In order for a ruling to constitute the law of the case, the question of law presented in the current action must have been actually decided in the former proceeding . . . . An issue may be "actually decided" even without an express ruling if a court can determine that the issue in question was decided by necessary implication. Restatement (Second) of Judgments § 27 comment g (1982) . . . . If an issue was not actually decided or decided by necessary implication, the prior ruling does not constitute the law of the case in the later proceeding . . . .

*PaineWebber, Inc. v. Farnam*, 870 F.2d at 1290-91 (internal citations omitted).  Here, the Illinois Appellate Court reviewed the factual record from the trial and expressly concluded that that defendants' conduct amounted to actual fraud.  The Illinois Supreme Court refused further review.  Given the record from the state court, this Court must apply the law of the case and follow that legal determination.

### Section 523(a)(2)(A)

The plaintiff relies on 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) in his quest to have the state court judgment declared non-dischargeable in this bankruptcy case.  The Court turns first to § 523(a)(2)(A) to determine if the plaintiff has met his burden for summary judgment under Count I of the amended complaint.  Section 523(a)(2)(A) provides:

> (a) A discharge under section . . . 1141 . . . of this title does not discharge an individual debtor from any debt—
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>> (A) false pretenses, a false representation, or **actual fraud**, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. §§ 523(a)(2)(A) (emphasis added).  In determining what constitutes actual fraud under § 523(a)(2)(A), the Court of Appeals for the Seventh Circuit has stated:

> 'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth.  No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'

*McClellan v. Cantrell,* 217 F. 3d 890, 893 (7th Cir. 2000) (quoting *Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)).  "Actual fraud" is not limited to misrepresentation, but may encompass "'any

deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Id.* (quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][e], at 523-45 (15th ed. 2000)). The required elements are: (1) A fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *In re Sielschott*, 332 B.R. 570, 572 (Bankr. C.D. Ill. 2005).

In applying these elements to the case at hand, the Court agrees with the defendants that the jury's Verdict Form C alone is insufficient to sustain a finding that the defendants engaged in the actual fraud required by § 523(a)(2)(A). However, the Court is unable to disregard the Illinois Appellate Court's determination, as stated above, that the evidence on which the jury based its decision supported a finding of actual fraud under Illinois' Uniform Fraudulent Transfer Act. Therefore, the first element—that a fraud occurred—is irrefutable. The second element—the debtors' intent to defraud Dr. Muniz—also is established conclusively by the state court record. The order of the Illinois Appellate Court is replete with references to the debtors' "intentional malice, trickery, and deceit" in preventing Dr. Muniz from collecting his arbitration award. As to the third element—that the fraud created the debt that Dr. Muniz seeks to except from discharge—there is no question that the illicit transfer of assets from HMC to HC underlies the award of actual and punitive damages[6] and attorney fees that is the subject of this dischargeability action. For these reasons, the Court grants plaintiff's motion for summary judgment on Count I of the amended complaint.

---

[6] Punitive damages, awarded on account of a debtor's fraudulent acquisition of money, property, services, or credit, are excepted from discharge under § 523(a)(2). 4 *Collier on Bankruptcy* ¶ 523.08[4], at 523-55 (16th ed. 2012) (citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998)).

Section 523(a)(6)

The Court turns now to the question of whether summary judgment is appropriate with respect to plaintiff's claim under § 523(a)(6). This section of the Bankruptcy Code provides:

> (a) A discharge under section . . . 1141 . . . of this title does not discharge an individual debtor from any debt—
> . . .
>  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a)(6). To prove non-dischargeability under § 523(a)(6), the injury must be both willful and malicious. An injury is willful only if it is deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974 (1998). If the injury is the result, but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012). In *Jendusa-Nicolai v. Larsen*, the Seventh Circuit discussed the various meanings courts have given to the term "malicious." The Court concluded that "whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury … is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id*. at 324.

There is no question that the Illinois Appellate Court's decision is preclusive here too. Beyond the incontrovertible facts of finality and identity of parties, the state court decided the same issues that arise in plaintiff's claim based on willful and malicious injury. The Illinois Appellate Court upheld the jury's determination that "[d]efendants had a single purpose in dissolving HMC—to deprive plaintiff from collecting his award." *Muniz v. Herrin Medical Clinic, Ltd.*, 2011 IL Ill. App. Ct. 5-09-0614U (Bankruptcy document 42-1, ¶ 55, at 21.) The Bankruptcy Court is bound by the state court's decision that the defendants' fraudulent conduct was "reprehensible" and displayed "intentional malice, trickery, and deceit." It is obvious that the state court did not credit defendant

Bozorgzadeh's testimony that HMC's dissolution was prompted by lack of confidence following disapproval of a loan request and on advice of counsel. This Court is compelled by the state court's decision to find that the defendants fraudulently dissolved HMC and transferred its assets to HC knowing they had no legal justification. It is further compelled to find that defendants intended to inflict financial injury upon plaintiff in that their purpose was to avoid payment of plaintiff's arbitration award. For these reasons, the Court grants the plaintiff's motion for summary judgment on Count II of the amended complaint.

     See Order entered this date.


ENTERED: July 10, 2012

                              /s/ Laura K. Grandy
                              UNITED STATES BANKRUPTCY JUDGE